1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAMONT H.,

                 Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

CASE NO. C20-5335-BAT

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**

Plaintiff seeks review of the denial of his applications for Supplemental Security Income and Disability Insurance Benefits.  He contends the ALJ misevaluated the opinions of Brian Lear, M.D., and Herbert Yelverton, Ph.D.  Dkt. 19 at 1.  For the reasons below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 47 years old, has two years of college education, and previously worked as an auto mechanic, construction roofer, and contractor.  Tr. 97, 373.  At the time of the administrative hearing, Plaintiff worked part-time and described other work he attempted in 2018, but that did not rise to the level of substantial gainful activity.  Tr. 91, 189-91.

In February 2017, Plaintiff applied for benefits, alleging disability as of January 31, 2014.  Tr. 350-61.  His applications were denied initially and on reconsideration.  Tr. 275-83, 287-93.

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 1

The ALJ conducted a hearing on October 23, 2018 (Tr. 183-214), and subsequently issued a decision finding Plaintiff not disabled.  Tr. 88-99.  The Appeals Council denied Plaintiff's request for review making the ALJ's decision the Commissioner's final decision.  Tr. 1-7.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:**  Plaintiff had not engaged in substantial gainful activity since his alleged onset date.

**Step two:**  Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, arthritis, anxiety, depression, and history of alcohol abuse.

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity ["RFC"]:**  Plaintiff can perform light work with additional limitations: he can lift/carry/push/pull up to 20 pounds occasionally and 10 pounds frequently.  He can stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday.  He can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds, and must avoid unprotected heights and hazardous machinery.  He can understand, remember, and carry out simple tasks and job instructions, and can have occasional interaction with supervisors and co-workers, but no contact with the general public.

**Step four:**  Plaintiff cannot perform his past work.

**Step five:**  As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, he is not disabled.

Tr. 88-99.

## DISCUSSION

Plaintiff contends the ALJ misevaluated the opinions of Brian Lear, M.D., and Herbert Yelverton, Ph.D.  Turning first to Dr. Lear, the doctor performed a 2018 disability evaluation addressing Plaintiff's physical conditions and limitations.  Tr. 787-90.  Dr. Lear indicated many

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

significant limitations, such as a restriction to standing/walking two hours per day, sitting two hours per workday, and a requirement Plaintiff use a cane for walking more than one block.  *Id*.

The ALJ gave Dr. Lear's opinion little weight, noting the doctor wrote the opinion without any treatment relationship and his conclusions are contradicted by the doctor's examination findings, wherein Dr. Lear indicated Plaintiff's "relatively good functional status" did not justify starting opioid therapy.  Tr. 97 (quoting Tr. 839).  The ALJ also found Dr. Lear's opinion was "not well supported by the remaining objective evidence in the file, including the diagnostic studies."  Tr. 97.

Plaintiff does not dispute Dr. Lear had no treating relationship with Plaintiff (Dkt. 19 at 4) but argues the ALJ erred in failing to specify which evidence was inconsistent with Dr. Lear's conclusions and the objective medical evidence indicating normal findings is not necessarily inconsistent with disabling pain.  Dkt. 19 at 4-11.

The Court disagrees with Plaintiff.  First, it was not unreasonable for the ALJ to find Dr. Lear's observation Plaintiff has relatively good functional status and does not need opioids is inconsistent with the limitations the doctor assessed. Additionally, the limitations Dr. Lear assessed do not square with the medical record, which generally shows normal gait with no problems walking (other than in connection with an ankle injury that was expected to resolve (Tr. 1106)) and limited treatment for pain.  Dr. Lear himself observed Plaintiff to have a normal gait (Tr. 1194) at the appointment during which he rendered his opinion, which is inconsistent with the walking restrictions he indicated. Plaintiff thus fails to show the ALJ erred in finding Dr. Lear's opinion is inconsistent with the record.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the

1  opinion and the medical record).  The Court therefore affirms the ALJ's assessment of Dr. Lear's

2  opinion.

3       Plaintiff also challenges the ALJ's assessment of the August 2017 opinion of consultative

4  examiner Dr. Yelverton, arguing the ALJ purported to credit the opinion but did not fully

5  account for all limitations the doctor assessed.  Dr. Yelverton concluded, in relevant part:

6       [C]urrently [Plaintiff] is experiencing considerable anger which is a serious
   impediment to his thriving in a work environment.  With psychotherapy and
7  medication he may be able to return to his previous functioning.

8       . . .

9       The claimant has limited ability to reason effectively and his judgment is poor at
   times. He is able to do some meaningful work as he is helping his dying his father
10  and does household chores for him.  He is rather concrete in his interpretation and
   currently has limited social interaction. He has difficulty with adapting to
11  environments where he is not in charge and would need considerable help in
   being able to function in a work environment as an employee.  At the same time,
12  he has not been successful operating his own business.

13  Tr. 687.  The ALJ gave "some weight" to Dr. Yelverton's conclusions, noting they were "broad

14  and can accommodate a range of limitations," but are "also compatible with the [RFC]

15  assessment above, and to that extent, with the preponderance of the evidence in the available

16  treatment notes."  Tr. 97.

17       Plaintiff contends Dr. Yelverton's conclusions suggest limitations that are *not* compatible

18  with the ALJ's RFC assessment.  Plaintiff argues the "considerable anger" problem that Dr.

19  Yelverton mentioned would leave Plaintiff unable to interact socially to the degree contemplated

20  in the RFC assessment, and the RFC assessment does not provide for the "considerable help" Dr.

21  Yelverton indicated Plaintiff would require in adapting to working as an employee.  *See* Tr. 687.

22       Plaintiff's argument poses an alternative interpretation of Dr. Yelverton's opinions. The

23  ALJ gave some weight to the State Agency Psychological consultants who opined Plaintiff was

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 4

limited to simple and routine tasks and can have limited contact with co-workers and the general public. The ALJ found these limitations were consistent with Plaintiff's "anger issues, the history of alcohol abuse and the claimant's more recent efforts to seek specialized psychiatric management of his symptoms." Tr. 97. The ALJ recognized Dr. Yelverton also opined Plaintiff has anger issues and further indicated Plaintiff would need considerable help to function in the work environment.  The ALJ concluded Dr. Yelverton's opinion was consistent with the opinions of the State Agency consultants and thus similarly limited Plaintiff to simple and routine tasks with limited contact with co-workers and the general public, as set forth in the RFC determination.

The Court is thus confronted with the degree of difference between the ALJ's interpretation of Dr. Yelverton's opinion and Plaintiff's interpretation about the impact of anger and need for help. The Court cannot reweigh the evidence and cannot say the ALJ's interpretation of Dr. Yelverton's opinion is unreasonable. There is no clear evidence that would tip Dr. Yelverton's opinion towards Plaintiff's interpretation, making acceptance of the ALJ's interpretation untenable. Thus, although Plaintiff has raised a reasonable argument, the Court is required to affirm the ALJ's determination.  Accordingly, the Court affirms the ALJ's assessment of Dr. Yelverton's opinion.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 12th day of January 2021.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23